Good morning, Your Honors, and may it please the Court, I'm Douglas Leder from the United States Department of Justice, representing the United States in these issues. With me today at council table is Mr. Matthew Perry from the Office of General Counsel at the Federal Bureau of Investigation. With the Court's indulgence, I would like to save five here to answer your questions. As Your Honors are aware, we are here in a rather odd situation because we have the district court has struck down an act of Congress as unconstitutional on its face. But as the district court itself recognized, this is a situation where the court, in all of these cases, with all of the, I'll use the NSL, national security letters, with all of the NSLs at issue here, the government has acted in a constitutional way. So we have this strange situation where the court has enforced the NSLs, except the one that was in the specific case where the court struck down the statute. But the court, in enforcing the NSLs, the district court recognized the government has here acted constitutionally. Now, there's a very clear difference in approach that will be taken by my friend, Mr. Opsahl, and the United States. We're urging this Court to do what the Second Circuit did in the Doe case. The Second Circuit looked for ways to carry out its obligation to enforce the Constitution, but at the same time, to uphold acts of Congress where possible. And the Second Circuit found a way to do that. Mr. Opsahl is instead asking you to go into direct conflict with the Second Circuit and instead to look for ways to strike down the statute. And we don't believe that that's an appropriate way for the courts to carry out. They're extremely difficult. I think it was Justice Holmes who described it as the hardest function that you have of examining the constitutionality of statutes. And so here, we feel ---- ----- to follow the path of the Second Circuit. Exactly, Your Honor. What do we do about the reciprocal notice procedure? Because even the Second Circuit itself acknowledged that it didn't have the power and authority to make that law and suggested that that, along with two other avenues, be considered in terms of changing the law. What do we do with that? Your Honor, what we would urge you to do is to look at exactly what the government has been doing for five years now. And as we made very clear in the record, we are following exactly the procedure that the Second Circuit said would be consistent with the Constitution. And so as you look at this, we urge you to ---- Has any measures been taken to Congress to try to change the reciprocal notice procedure to make it law, as the Second Circuit suggested? Your Honor, my understanding is, and I'm a little hesitant to talk about this in this sense, is we know proposals can be made to Congress, and who knows what will happen. The government is working on some ---- is working with congressional staffers, et cetera. We would hope that at some point we would have legislation. We do not at this point. And I'm not going to hear or make any predictions about whether anything will be passed. The district court also seemed very troubled by the lack of any regulations promulgated by the government, or even any published guidelines or policy statements. What's the situation with that? Well, Your Honor, we do have public statements. The Attorney General notified Congress very clearly that we will follow the procedure in Doe, and we have been, without exception, we have been. In addition, Your Honor ---- But no regs have been issued, correct? I'm sorry? No regs have been issued. There's no regs. What we have is there is an internal direction within the FBI on how to conduct certain types of investigations, and those set out exactly what is to be done. And those say, follow what the Second Circuit has done. Those are internal directives. Would there be any consequences if the FBI decided not to follow? There very well could be, Your Honor, because as ---- Very well could be, or there is? There very well could be, and I'll explain, because it's a little complicated. As we have pointed out, we are under an injunction that was issued by the Southern District of New York, was modified by the Second Circuit. But it is an injunction. We cannot issue and attempt to enforce NSLs unless we follow the procedure set out by the Second Circuit. So when you say ---- Isn't it disputed here whether the FBI followed the procedure, doesn't NS, the number, recipient number one, dispute whether the procedure was followed here? I don't think the ---- there is a dispute that we provided the type of notice exactly as the Second Circuit has said. We have made very clear what our obligations are, the three provisions the way that the Second Circuit interpreted the statute. We agree that we have those burdens and what we have to show. The ---- our ---- Mr. Opsahl has pointed out that the Inspector General has criticized certain practices by the Bureau, but it's not practices that violate what the Second ---- I thought the opposing counsel was concerned about the statement by the Second Circuit that the proceeding should be completed within 60 days. Of course, the government doesn't have that ability to require that. So what do we do about that requirement that the Second Circuit identified? Your Honor, on that, we believe that this is within the power of the judiciary to make sure that the any constitutional requirements are complied with. The ---- the ---- as we know, it is perfectly within the power of the recipient, whoever that may be. Once the government brings its action, the recipient can say to the court, this should be and, indeed, needs to be expedited because of the requirements. If you're going to find that Friedman is the law, then the judicial review process should be completed quickly. If the ---- we would hope and expect that in the main that would happen. Now, here, the district court itself didn't follow that in this particular case. But we would hope that since it is, again, fully within the power of the judiciary, as we know, under the Federal Rules of Civil Procedure, the district courts can expedite cases, and we would never oppose any kind of expedition in these kinds of cases. So this is something that, again, is fully within the power of the judiciary to make sure that the ---- whatever constitutional requirements there are have been complied with. Ginsburg. So the Supreme Court said that was okay, I think, in the city of Littleton, but the opposing counsel says, well, that only applies to State statutes. What's your response to that? Verrilli, I don't know why that would be true. Again, it would be within the power ---- as we know, Congress can impose timing obligations on the judiciary and has done so in various cases. The Victims Protection Act, I think it is imposed on the courts, a 10-day requirement to rule, et cetera. And obviously, this gets into a very touchy area when Congress is ordering the judiciary to do things by specific dates. But, again, I don't know why it would be true that the judiciary would be incapable just as the Second Circuit, and it would be open to this Court, to tell us what we have to do to comply with the Constitution in this area of NSLs. I don't know why the courts themselves couldn't ensure that the Constitution, whatever the Constitution means, is complied with in any particular case. So that it's a ---- again, we think this comes down to a very basic philosophical point about the judiciary has it within its power, as the Second Circuit did, to have this scheme work in a way that is consistent with the Constitution. And it is a very important scheme. Sotomayor, did the district court have it within its power and just decided not to do that? I mean, did the district court have the option of following the Second Circuit? Apparently, she did. She rejected it and decided to do the facial ---- review the facial challenge and find it facially. Yes. The district court clearly had that authority, Your Honor, because, as you note, the district court actually ordered enforcement of all of the other NSLs that are involved in this case. The district court said that in those cases, what the government had provided to the Second Circuit, the district court said the government has complied, and therefore, I order enforcement. And the district court denied a stay, this Court denied a stay, and Justice Kennedy denied a stay. So the ---- you know, all of these NSLs, except one, have been enforced. And so ---- I guess ---- And so ---- I'm sorry. I didn't want to interrupt your answer if you had further questions. No, Your Honor, I'd much rather answer your question. I guess my worry is that we have these orders, and it seems to me that we address these orders in three different ways. There's the creation and the application of the order. There's the duration of the order. And then the third is the ending of the order. Now, my worry here in applying the standard review I think we need to apply is that the Second Circuit didn't sufficiently address the ending of the order. It seems to me that all we have here is that the petitioner has to petition to end the order, that the petitioner does petition, then the government makes its affidavit that it needs to to protect the order. Then the petitioner has to challenge again and has to wait a year. It seems to me that if I'm going to narrow this particular statute, that there should be some obligation on the part of the government to end the order. Why isn't there? Why would that not be something I ought to be worried about? I don't know that the Second Circuit really addressed it, but why is it that the petitioner is going to be quote-unquote gagged for as long as the government so desires? And the only way the order ever comes up is if the petitioner does something about it and then the petitioner is prohibited from attacking it for a year. I mean, it seems to me that if I really want to make this as narrow as possible, that we ought to have something in here about the government's responsibility to end the order. Your Honor, I have several reactions. First, I'd like to point out an analogous situation. As Your Honors, I think, are well aware, with regard to proceedings before a grand jury I don't think this is a grand jury. It is not. It is not, Your Honor, but if I may, I just want to point out one, what I think is an analogous situation. Grand jurors and the participants before the grand jury, the government attorneys, have a secrecy obligation imposed on them. I'm not talking about witnesses at the moment, as we know. That's a question the Supreme Court has dealt with in Butterworth. I'm talking about the grand jurors themselves. There is an obligation of grand jury secrecy and that applies forever unless a court overturns it. There's an incident in the last several years. I think a court said the Alger Hiss grand jury records could be at some point disclosed. But otherwise, the proceedings before a grand jury are sealed and, I repeat, the grand jurors themselves are obligated to, are covered by that obligation, as are the government participants. But the grand juror is not the one who has to come forward and do anything about it. But the government does something. In this particular case, the people who are subject of these disclosures are the only ones who, under the statute, need to do something. And as I've outlined, and I think you're agreeing, can't do anything for a year after one particular challenge, if you will. And the government can keep these things going on permanently. And they have no obligation. It seems to me if I wanted to narrowly tailor this, I would suggest the government has some obligation. And then to several points. And by the way, I think this is the same as Seattle Times v. Barnhart in that sense. I'm not aware of the ---- Well, I'm not sure I want to go with Seattle and the analysis there. Okay. I'm not sure that I want to impose that burden. And the ---- And Seattle has a burden, and I'm not sure I want to impose that burden. And I want to ---- Supposing I want a strict scrutiny burden, as has been suggested by the Second Circuit. So we have a situation, and the main reason I brought up Seattle Times is that, remember, that this is a situation where all we're talking about, the only nondisclosure restriction is on information that the recipient has learned as a result of the government itself. Remember, there's no restriction if the recipient has totally separate information and they want to talk about it, this statutory scheme is irrelevant. So this is a situation where the government tells a private person about something, but then places a limitation on that. The several points, Your Honor. One is, again, the cases before the Court, and I can't get into any details in this setting, but if the Court wants, the ---- in these instances, the specific NSLs we're talking about, we can confirm that we have looked and they should, as of today, they should still, the nondisclosure requirement should remain. That's not the question, because the question really is not have you looked, because under the statute, of course, the poor person who receives the disclosure can get the government to look, but it seems as if that's the only time the government looks. The government is the one who instituted the problem in the first place, and then it leaves to the poor person who is subject to those requirements to just constantly petition the government to get rid of it, and then, if they petition once, they can't do anything for a year. I'm still having a tough time to understand how that is a narrow tailoring of the statute or of the procedure. Right. Your Honor, and I think the best answer I can give you is that this is a balancing that Congress has done. Well, it's a balancing that Congress has done? Right. Because Congress has said — Well, then I can suggest it isn't narrowly tailored? I think that it — I think that Congress has done the appropriate balancing and that it is narrowly tailored, because Congress wants to, on the one hand — Well, I guess you haven't told me why, yet, it's narrowly tailored. I'm still trying to figure out why one can't envision in such a statute that the government, since they impose it, ought to have a burden to take it off at the appropriate time, that we're still going to make the poor person who's getting that be the one who forces it, and then say to that person they can't even force it for a year if you've tried to get it off once. And I think the reason why the one year is very reasonable and is narrowly tailored is remember that there are thousands of NSLs issued a year. And remember, by the way, I did want to say one thing up front. Remember, this is not — the government is not getting content here. There always seems to be some confusion in the media about that. This is not content. Anyway, so there are thousands of these issued every year because this is such a useful tool in counter-espionage, counterintelligence, cybersecurity investigations. The administrative burden would be totally impractical if the Bureau had to spend — So, in your mind, the argument is we issue these, we issue so many of them, it shouldn't be our burden to deal with when they should quit. Because what you're really saying is that it is only the petitioner who has the burden to say that the gag orders no longer fulfill one of the reasons relating to the government investigation, when in fact the government would be the best one to know that. And therefore, if the government were forced under a narrow tailoring to make that effort, it would seem to me it would make it narrower and might make the statute more constitutional. Your Honor, the — again, my best answer to that is narrow tailoring nevertheless has to take into account — it's not narrow tailoring in a way that would be impossible. What Your Honor is suggesting is, yes, the Bureau would not be able to function if it had to look at every single NSL issued over the years, thousands and thousands of them every year, and it had to look at every single one and determine whether confidentiality still had to stay. So what Congress did is it said if the recipient wants to speak, the recipient has a way to trigger the judicial review mechanism. And remember, overwhelmingly, overwhelmingly, the recipients do not wish to speak in the way that is involved here. They have not said, no, no, no, we want to constantly say we got this NSL, we got this NSL, then we got another one. That's not what they've said they want. And so — Can we really know that? I mean, doesn't it take a lot of resources when you have the FBI come and tell you this? I mean, do we really — is that really an accurate percentage? Do we really know? I think you can know, Your Honor, because, again, the way the Second Circuit interpreted this, remember, there is no obligation on the recipient to go to court. The recipient notifies — says to the government, I want to speak. And then the government is the one that then has the obligation to go to court and convince the court so the court ultimately has the authority. Under the Second Circuit's as-applied approach? Exactly. Yes. Well, just — I know you're out of time, but I have two questions I really want to ask you. One, just take me through this. Let's — just giving examples of what could happen, and I just want to know what the effects are from your perspective. If we affirm the district court on the facial unconstitutionality, we have the Second Circuit out there saying this is — with these methods that they've read into it, it's okay. What happens? What's the effect? A couple of points, Your Honor. One, as you know, we have made a severability argument, so we would hope that at a minimum, even if you're inclined to agree with the district court, you would nevertheless allow the government, if it wishes, to issue NSLs with no nondisclosure requirement. The government would be able to do that. Two, we also would ask — and I know I'm getting into the answer here preliminarily — we would say at a minimum, this can't be applied nationwide, because especially within the Second Circuit. The Second Circuit has law directly on point, so it would be very odd for a district court to tell the states within the Second Circuit what the law is. What would then happen, Your Honor, is if the injunction is upheld, basically it means that we can't use NSLs, because the court would be imposing on us requirements that we apparently cannot meet, because we are meeting them now, and you would be telling the government that that's not valid. Let's say a different approach, or maybe a different approach, that would follow some but not all of the Second Circuit's read-ins to the statute. What happens then? I really think it would depend on which you follow and which you don't. Since the Second Circuit believed that what it had set out was required under Freedman, it would really be a question of which things you choose and which ones you don't. Further answer to your question is, obviously, if this court — I think it would depend on the way you do it. If this court strikes down the statute but says, of course, if Congress puts this — the statute would then be valid, then obviously we would have — we would urge and have to hope that Congress very, very expeditiously issue — you know, passes new legislation to take what the Second Circuit has done and make that into law. But in the meantime, unless — we would hope if you do that, you would do what the district court here in sua sponte, stay the order, and, as the district court has done, continue enforcing them, that — so that in the meantime, this mechanism remains within the FBI's power. Because I have to emphasize again — Until Congress passes the law? Well, Your Honor, it's — Six years since the Second Circuit suggested it. I — one possibility, and again, as you know, I'm not suggesting this because we hope that you do the opposite. For instance, when the Supreme Court struck down the bankruptcy system in Marathon Oil, the Supreme Court stayed its decision and gave Congress a certain amount of time, and it extended it several times so that Congress could act, and it allowed the bankruptcy system — the unconstitutional bankruptcy system to continue operating for quite a while until it could be considered by Congress. And obviously, this would be complicated by the fact that, you know, we have an election coming up any moment, so, you know, it would be — might be very difficult for Congress to act quickly. But as I say, Your Honor, the — this — the NSLs, as the declarations point out, the NSLs are an extremely useful and important tool that we use in counterespionage, cybersecurity, et cetera, counterterrorism investigations. And if we don't have that tool, you have — the courts would have greatly hamstrung our ability to protect national security. We've taken you way over your time. We'll give you a minute for rebuttal, however. Thank you very much, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, my name is Kurt Opsahl. With me is my colleague Cindy Cohen, and I represent two unnamed service providers who are defending the district court's decision finding the national security letter power facially unconstitutional. My clients are unnamed because they have been subject to a statutory gag that prevents them from even acknowledging the mere fact of receiving the NSL. And over the past several years, there's been a wide-ranging public debate about national security letter powers and its documented history of misuse. My clients have been unable to contribute to that debate. Well, they can talk about — the opposing counsel says they can talk about anything they want about NSLs other than the fact that they've specifically received one. Indeed. So it would have to be limited to the specific nondisclosure requirement, which is you can't say that you've received an NSL. I apologize. Just to — what I was going to finish was they can't talk with the gravitas of saying, I am a recipient of an NSL. They can't talk about their experiences of having received them, how that affected their relationship with their customers. And at the same time, my — Mr. Letter has said that service providers don't want to speak out. And I think that this has not actually been borne out. More and more service providers are issuing transparency reports where they are providing aggregate numbers of the types of legal processes that they receive. And many of them would like to say what national security process. In fact, this is shown in the record. Both our briefs and theirs have referred to the Deputy Attorney General's letter that was written to a number of service providers, allowing them, licensing them to speak about NSLs in bands of 1,000 from zero to 999. What does that mean? And how does that affect our analysis? I mean, does that show that secrecy is not necessary, as the government argued? Or does it show that, in fact, it's fairly narrow because you are able to speak in general about the receipt of these NSLs? I believe it shows a couple of things. One is that what it functions is that means that anybody who has received more than 1,000 NSLs can participate in public debates with the gravitas of discussing having received them. But only small providers are the ones who are unable to assert that they have received one. They have to leave open the option of not receiving it with the zero to 999. So the government says a small operator, if they acknowledge receipt of an NSL, is more likely to put the people who the government doesn't want to put on notice, they're more likely to put them on notice because it's not absorbed in the millions of customers that a huge company would have. Indeed. And they're concerned. I guess there might be some scenario in which there is a very small number of people. But for most server providers, even small ones, have a sufficient number of customers that it would not indicate to any particular person that their information was being sought. And if that was... You know that. I mean, the government tells us one thing and you're saying a different thing. So what's the evidence or how do we know that what you're saying is correct? Well, I guess to talk about the specifics about my clients and their number of customers, we'd have to go into a sealed session. But more generally, what I was trying to respond to was the government's position that service providers don't want to speak out. And that they do, but are limited in what they can say. And I think what the 0 to 999 letter also shows is that it is a government license system. The very kinds of things that Friedman was talking about. Now, this was not actually discussed in the statute, but they have, through this letter, de facto created a license for some providers to be able to talk. Other providers to not be able to talk. And there's many things that a provider might want to say in addition to the particular number of NSLs they've received in an annual period, as many transparency reports are semi-annual, which is more common. They might want to say, like, it's an increased number. That this has really been an upswing this year. Let me ask you this. It's the only issue here as to whether we read the statute in light of the Second Circuit's procedures. And the district court stated that your clients conceded that with these procedures in place, it was constitutional. Then there was some dispute about that in the briefs. But the transcript does indicate that was the position that the attorneys took before the district court. So do you agree that if the Second Circuit procedures were implemented, the statute would be constitutional? No, I do not. And I think there has been some discussion in the briefing about this alleged concession. And I think there's been some confusion. The point was being made in oral argument that if a statute complied with Friedman, a hypothetical statute complied with Friedman, then that would be constitutional under the Friedman procedural protections, in a sense, a tautology. And in the same oral argument transcript, the counsel clarified that if Congress had built these three Friedman steps in, then I think that would solve the infirmity that we've raised in our petition, talking about Friedman being built into a hypothetical statute as opposed to the Mukasey decision. The Mukasey decision does not, as the counsel later stated, the Mukasey court, I strongly believe that it did not comply with the requirements of Friedman. How would you characterize the facial constitutional view on appeal here? Is it overbreadth or vagueness? I think in two major areas. One is the procedural protections under Friedman v. Maryland. And a second is after one overcomes the procedural period, if that's possible, then there is the substantive standard for prior restraints scrutiny review. And these are separate analysis. Overbreadth, now the government does talk a lot about overbreadth. But as actually the Friedman court itself clarified, that they didn't need to do an overbreadth analysis, that the Friedman procedural protections were a separate analysis from overbreadth. Now, when you get to the narrow tailoring analysis, you can see that, in fact, the statute is overly broad. It is overly broad with respect to duration. It is overly broad with respect to the subject matter that is being protected against. But that is not part of the Friedman analysis. So the government says that there's no dispute that national security is a compelling government interest. And I didn't understand you to dispute that. Is that correct? I understand that, yes. So under strict scrutiny, we're looking at whether the statute is sufficiently narrowly tailored. Is that correct? Yes. We're looking whether it's narrowly tailored to achieve that purpose. And so the statute itself talks about it has to be necessary to meet enumerated harms. It has to be necessary for these compelling government interests. The Second Circuit snipped off parts of that saying, well, this danger to any person's health or safety might be too broad, so it has to be limited to the intelligence investigation under review. So is that part, in your view, not narrowly tailored, the necessary to the security interest? I believe that there's actually several problems with that. One is that, well, it's not within the statute cabined to the national security interest. In fact, the statute speaks of criminal harms. It speaks of interference with diplomatic relations. But I thought the information request could only be issued for the two intelligence gathering. Is that right? And then the Second Circuit limited the nondisclosure to other items related to that purpose. So even read through the lens of the Second Circuit's analysis, is that, in your view, not narrowly tailored? I don't think that it is narrowly tailored enough. I mean, one, it is — it allows for something which may be having to do with a national security investigation, but that the — well, I should say, I don't think that's an appropriate read of what the statute says. But putting aside the concerns raised with whether the Mukasey court could rewrite the statute in that manner, it still is fairly broad. It allows for a wide range of things that may be sort of tangentially related to it, that the danger is interference with diplomatic relations, that it is stemming from, perhaps, a national security investigation, but it is not a national security danger. And I think this comes up in various contexts. The government has, you know, fretted that other countries will look askance at the United States for its lack of secrecy. And if they felt that that was sufficient to meet the standard, they could — they could assert that in all cases. So in your view, the interference with diplomatic relations related to a national security issue is not a compelling government interest. Is that — That it could certainly be not a compelling government — not always a compelling government interest. What's your view? Should the district court have first conducted an as-applied challenge, I mean, or figured out whether or not, even in case number one, it should have followed the Second Circuit? I don't believe so. I think it was entitled to take a facial challenge under the Friedman test. That is available as a facial challenge, and we brought that facial challenge. And once it determined that the statute was facially invalid for failing to provide the three prongs of the Friedman test, then it should have and did strike down the statute. I disagree with the court's subsequent decisions to allow some of the other NSLs to go forward. I believe that the court was trying, in a sense, to effectuate its stay. It stayed the decision, pending the review of this court, and was faced with a lot of NSLs which were coming to the district court subsequent to its decision, and for whatever reasons, determined that that was the way to effectuate the stay. So what relief are you seeking? An invalidation of the statute? An invalidation of the nondisclosure? Well, both. Invalidation of the nondisclosure for its First Amendment problems under both strict scrutiny and under Friedman, that we believe that the gag provision is not severable, so that the court correctly found that it was not severable, and therefore the entire statute was invalid. And then also we have raised, in one of the cases, concerns about the substantive procedure that it allows for the government to obtain information about a potentially anonymous speaker without any court review, so that a court can determine and balance the First Amendment rights to speak anonymously against the government's need for that information. I have a question about just the structure of analysis that I've been struggling with. So when I look at the Supreme Court's prior restraint cases, either it's a licensing scheme where you have First Amendment product or product that you need to get approved by a licensor, or it's a court-issued injunction before the speech occurs. Here, as I read the statute, the statute says you can't disclose this. But then if the person discloses, the only option the government seems to have is after the disclosure, going to the court and seeking an injunction and then a potential contempt order or subsequent criminal punishment if the mens rea standard is met. So I was having trouble squeezing this into the prior restraint cases as the Supreme Court has detailed them. Can you help me on that? So I think it is more like a licensing scheme. It's just a licensing scheme in which the licensor has made an initial determination sort of simultaneously with issuing the NSL, as we have seen through the So the newsworthy event is the government has told me not to talk about this NSL. So that's sort of a newsworthy event that I want to talk about. But the statute says that you need to remain silent on it. But there's no, it isn't like I had this news before I had the and I walked before I had the right to speak. I mean, so it didn't seem to quite, it seemed more like a confidentiality statute like we were discussing where it says if you publish the names of juveniles in the newspapers, there's criminal penalties or there's contempt sanctions. Well, let me address that. I think one problem with, and the government has sort of made the argument that receipt of the NSL is information provided by the government. And this is something that the government is doing to you. And if we take the sort of position that if the government does something to you that is information provided by the government and therefore less protected, you're less able to speak. No, I'm not saying that. But the newsworthy event is the government's action. You must agree with that, right? The newsworthy event is I received an NSL. I mean, absent that, there would be nothing to talk about. If the government didn't come with an NSL, certainly there wouldn't be as much to talk about. No. So that's not – I had this great idea. I had uncovered government corruption or some problems. And then the government says, no, you may not speak about that. But, I mean, it's more than just the fact – I mean, there are a number – there's a number of things. I mean, one, it is that the government is doing this to you, is coming to you and giving what many people believe to be an unconstitutional letter. And they're unable to talk about it, to go to their legislature and make a complaint about it, to talk in public forum about the experience of having received it. There are other aspects of it as well. I mean, we've seen from the Department of Justice Inspector General reports that they have asked for information that goes beyond the scope of the statute and have received that in some cases. And you can't talk to other service providers about this problem and say, okay, you know, if you get one of these, you know, watch out for this overly broad request. So there's a lot of aspects to what you might want to say. You might want to give aggregate information in a transparency report, as many service providers do, simply providing the number being received over time periods. And you might wish to provide opportunity to – well, you would want a court to determine whether it needs to be secret. And I think that's something that is very important and they want to talk about. Along, I guess, the same line, but a slightly different question. Can we analogize these service providers to newspapers and similarly situated speakers who wish to exercise their free expression? There's something in DOE, and I'm not sure what to make of it, DOE's characterization of the nondisclosure requirement as an atypical prior restraint. Can you comment on that? Yeah, so in DOE v. McKessie, it did say that it was atypical. And I think maybe the passage you're referring to is when it discussed that this was not a class of providers who were speaking out regularly. And I think that that actually is not the case anymore with the transparency report, that that sort of aspect of the court's wisdom about what service providers, that my esteemed opponent has also reiterated saying that service providers don't wish to speak is not actually borne out either in the record or in the world, but that the service providers do want to speak. So in that sense, they are perhaps like a newspaper that wishes to publish things to the world, though with respect to transparency report, it's certainly a little bit more narrow than what you cover in a typical newspaper. Could you respond to Mr. Letter's argument in response to Judge Smith's question regarding the onus being placed on the service provider? I think Mr. Letter compared it to a grand juror who has to keep things secret for a while. What's your response to that? Well, I think that the grand jury analogy is not analogous for a number of reasons. First, as he was already distinguishing, there's a difference between a witness and a juror. And in the case of an NSL recipient, they are much more similar to a grand jury witness than a grand jury juror. And I think it's not clear to me that the juror is an appropriate, where the parallels really come from that. But be that as it may, there's another distinction between the grand jury process and the executive self-certified gags that come with a national security letter. And that is the grand jury is an appendage of the court. It is going through a court-supervised and authorized process while the gag that comes from a national security letter, which has unlimited duration, comes from the self-certification of the executive branch. And the court is not involved in almost all of the cases. We've had maybe, I think, seven challenges to NSLs over the many years. By and large, these are existing without any court involvement. And I just wanted to ask you some of the same questions I asked Mr. Letter at the end there. What, in your view, happens if we arm the district court just on the facial unconstitutionality with respect to the Second Circuits? I actually don't think that they are in conflict. And I know Mr. Letter felt that this would create a circuit split or a conflict, but I actually don't think that's the case. Both Mukasey and Judge Ilston in the decision below followed Freedman. And their analysis of the constitutionality was, in most respects, very similar. It was a question of what the remedy would be. And I think the best way to really look at the Mukasey decision is as an advisory opinion. Its discussion of how this might be solved is filled with language like would, could, perhaps. It was making suggestions on what might happen in a hypothetical that was not then before the court. And in fact, I think those instructions were best for Congress to look at and take appropriate action. But within the confines of a judicial decision, it was advisory as to what might happen in a future case. And the other question that I asked was if this were to adopt some, but not all of the read-ins, that's what I've been calling it, of the Second Circuit. Well, I mean, again, I think in this case I do agree with Mr. Letter that it would depend on which ones that were adopted. There are a number of substantive problems. For example, the reciprocal notice provision that Mukasey suggested does not put the burden on the government. The first burden remains with the petitioner. For subsequent, if you lose the first round and you have to go back, the burden clearly remains with the petitioner, and that doesn't comport with Friedman. So there would still be problems under certain aspects. On the other hand, the Mukasey court read that the standard of review was unconstitutional, that, I mean, I think that aspect of the decision, many aspects of the decision I would agree with, but would not create a conflict. Does that answer your question? Okay. Thank you. You're over time now. I'll give the government a minute for rebuttal. Thank you, Your Honors. I'll be quite brief. I have three critical points that I'd like to make in response to the very skillful argument by Mr. Opsahl. One is, with regard to abuses that the Inspector General had found at the Bureau, the most recent Inspector General report on this, it's a public report, August 2014, and there the Inspector General points out that the Bureau has made very great strides in addressing many of those abuses. There's more work to be done, but I commend that report to Your Honors. Second, as far as the point Mr. Opsahl made about wanting to participate in the public debate, remember, there is a category that the Deputy Attorney General provided that recipients can make disclosures, and there is a category of 0 to 249. So, recipients can disclose that. They're allowed to disclose within these bands, and they can fully participate in the public debate. They can say, as we have disclosed, we receive, we're in that band, 0 to 249, or they can participate in the public debate. You know, 1,000 to 2,500, I don't remember what all of them are. And it can say the very things that Mr. Opsahl said they can't. They can say, and we think the government is asking for too much in many of those, in many of the NSLs we received. And we want to talk to our other, you know, our fellow recipients and see if they too have felt that there's too much. And we think Congress ought to do something about that. They can do all of that. There's no, there's nothing that says that they can't comment what they're, they're allowed to make specific comments about quantity. There's absolutely no ban on them commenting on the quality of the, of those they received. As far as, as far as foreign relations, the effect, two points. One, if the Court wishes, we can go into that in the closed session. In addition, there are many cases. I don't have them off the top of my head. If the Court wants, I'd be happy to provide them that say foreign relations is a key part of national security. These aren't two totally separate things. And the last thing I just wanted to note is, you know, when, when judges, you know, the Second Circuit judges, such as Newman, Sotomayor, and Calabresi, when they issued this decision, they did not mean it as some sort of advisory opinion. They were modifying an actual injunction imposed on the government, and they said, though, that there was no reason that we would be, the government would be prohibited from continuing to issue NSLs if we met those, those conditions. And in fact, since then, we have issued thousands of NSLs within the borders of the Second Circuit. So it's, the Second Circuit wasn't saying Congress must pass a statute. The Second Circuit was simply modifying an injunction and imposing that on the government. Thank you. Thank you very much, Your Honor. We thank each party for their arguments. In the case of National Security Letter, under seal versus holder, is submitted? Or actually, it's not submitted. So we're adjourned to discuss whether we want a classified hearing, and we'll send word back.
judges: Ikuta, Smith, Murguia